**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

IN RE:

U.S. TRUCK COMPANY HOLDINGS, INC.,

                Debtor.                         Case No. 05-CV-70510-DT
                                                  Bankr. No.  99-59972-SWR

_____/

CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION FUND,

                Appellant,

v.

U.S. TRUCK COMPANY HOLDINGS, INC.,

                Appellee.

_____/

**OPINION AND ORDER REVERSING IN PART, AFFIRMING IN PART BANKRUPTCY
COURT'S ORDERS AND REMANDING FOR FURTHER PROCEEDINGS**

Pending before the court is Appellant Central States, Southeast and Southwest Areas Pension Fund ("Central States's") February 8, 2005 "Notice of Appeal."  Central States filed its opening appeal brief on May 16, 2005; Appellee U.S. Truck Co. Holdings, Inc. ("U.S. Truck") filed its responsive brief on July 22, 2005; and Central States filed its final appeal brief on August 5, 2005.  Having reviewed the briefs, the court will reverse in part and affirm in part the bankruptcy court's orders, and remand for further proceedings.

# I.  JURISDICTION AND STANDARD OF REVIEW

## A.  Jurisdiction

On January 27, 2005, the United States Bankruptcy Court for the Eastern District of Michigan granted U.S. Truck's motion for summary judgment, denied Central States's motion for summary judgment, and disallowed Central States's claim for pension withdrawal liability in the amount of approximately 1.5 million dollars.  The parties agree that Central States filed a timely notice of appeal pursuant to Bankruptcy Rule 8004, and this court has jurisdiction over the appeal of the January 27, 2005 orders and the interlocutory orders at issue in this appeal pursuant to 28 U.S.C. § 158(a).

Under 28 U.S.C. § 158, the court has jurisdiction over appeals from final orders of the bankruptcy court.  Specifically,  28 U.S.C. § 158 states in relevant part:

> (a) The district courts of the United States shall have jurisdiction to hear appeals
>
> (1) from final judgments, orders, and decrees;
>
> ***
>
> (3) with leave of the court, from other interlocutory orders and decrees; of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.
>
> 28 U.S.C. § 158(a).

A final order of a bankruptcy court may be appealed as of right under § 158(a)(1).  *Belfance v. Black River Petroleum, Inc. (In re Hess)*, 209 B.R. 79, 80 (B.A.P. 6th Cir. 1997).  However, under § 158(a)(3), a decision to grant leave to appeal from an interlocutory bankruptcy order falls within the sound discretion of the district court.  *In re M.T.G. Inc.*, 298 B.R. 310 (E.D. Mich. 2003); *In re Dow Corning Corp.*, 255

2

B.R. 445, 540 (E.D. Mich 2000).  Thus, the court concludes that jurisdiction is proper

under 28 U.S.C. § 158(a)(1).

## B.  Standard of Review

In reviewing a bankruptcy appeal, the district court must accept as correct the

bankruptcy court's findings of fact, unless they are clearly erroneous.  Fed. Rules Bankr.

Proc. R. 8013; *see also In re Caldwell*, 851 F.2d 852, 857 (6th Cir. 1988).  The

bankruptcy judge's conclusions of law, however, are reviewed *de novo. Id.* at 857;

*Heights Cmty. Congress v. Hilltop Realty*, *Inc.,* 774 F.2d 135, 140 (6th Cir. 1985).  A

bankruptcy judge's order granting summary judgment is a question of law and is

reviewed *de novo. Myers v. IRS (In re Myers)*, 216 B.R. 402 (B.A.P. 6th Cir. 1998); *In*

*re Battie*, 995 F.2d 85, 88 (6th Cir. 1993).  As such, the court reviews the bankruptcy

court's January 28, 2003 order granting Plaintiffs summary judgment *de novo*.

Federal Rule of Civil Procedure 56, which governs summary judgment motions,

provides, in part, that:

> [t]he judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any, show that there is no genuine issue as to any
> material fact and that the moving party is entitled to a judgment as a
> matter of law.

Fed. R. Civ. P. 56(c).  The moving party has the burden of demonstrating that there is

no genuine issue as to any material fact, and summary judgment is to be entered if the

evidence is such that a reasonable jury could find only for the moving party.  *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

3

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 250. In assessing a summary judgment motion, the court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. Fed. R. Civ. P. 56(c); *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## II.  BACKGROUND

This case revolves around the question of whether the "trucking industry" exception to pension withdrawal liability under the Multiemployer Pension Plan Amendment Act of 1980 (the "MPPAA"), 29 U.S.C. § 1381, applies in this case. The bankruptcy court found that the trucking industry exception applied, specifically because it held that Central States failed to meet its court-imposed burden of proof establishing that the exception did not apply. Central States argues that the bankruptcy court erred by finding both that Central States carried the burden on this issue and also that Central States failed to meet this burden. Central States also challenges the bankruptcy court's assessment of discovery sanctions.

Central States is a nonprofit multi-employer pension plan and trust to which more than 3,000 employers are required to contribute on behalf of their employees (Appellant's Br. at 1.) Until 1999, U.S. Truck was engaged in the long-haul and short-haul trucking business, and was a contributor to Central States. On December 23, 1999, U.S. Truck filed for bankruptcy relief under Chapter 11. According to Central States, on the same day that it filed its bankruptcy petition, U.S. Truck shut down and ceased contributing to Central States. (Appellant's Br. at 3.) Central States asserted

4

two claims for statutory pension withdrawal liability: Claim Number 84 for $3,008,587.51 and Claim Number 90 for $12,525,682.56.   In response to Central States's claims, U.S. Truck asserted the "trucking industry" exception under 29 U.S.C. § 1383(d) as an objection.  Eventually, Central States agreed to, essentially, withdraw Claim Number 90, and to reduce Claim Number 84 to $1,504,293 (App. at 78 & 82A;[1] Appellant's Br. at 3.)

The heart of this appeal can be traced to the bankruptcy court's September 27, 2002 "Opinion Granting Debtor's Motion to Compel Answers to Interrogatories and the Production of Documents Directed to Central States and Denying Central States' Motion for Protective Order."  In that order, Bankruptcy Judge Walter Shapero held, among other things, that Central States bore the burden of proof to establish that the "trucking industry" exception did not apply to Central States's claim for withdrawal liability.  (App. at 60.)  The bankruptcy court also compelled certain discovery and withheld ruling on a request for attorney fees until after discovery was completed, when the court would "have a clearer picture of the parties' good faith or lack of it."  (*Id.* at 62.)           After Judge Shapero's ruling, Central States amended its interrogatory answers to respond that at least 51.29% of its contributions on the date of U.S. Truck's withdrawal (December 1999) came from employers primarily engaged in non-trucking industries. (App. at 116.)  Central States purportedly based its analysis on the Standard Industrial Code ("SIC") numbers obtained from *Dunn and Bradstreet Reports* relating to many of

---

[1]The parties each submitted their own appendixes, which contain many duplicate exhibits.  For ease of reference, unless otherwise noted, the court will refer to Appellant's appendix, and cite to it as "App."

5

Central States's contributing employers.  (Appellant's Br. at 7.)  Central States also

served U.S. Truck with a set of discovery requests.  (App. at 151.)

According to Central States, the purpose of the discovery requests was to narrow

the issues by asking U.S. Truck to admit that certain employers with household names

(such as Chrysler Corporation, Anheuser Busch, Nestle, etc.) were not primarily

engaged in trucking industries.  (Appellant's Br. at 8.)  U.S. Truck, on the other hand,

argues that "the intended result of Central States's tactic was to force U.S. Truck either

to depose all 3,500 employers, deny the admissions and risk sanctions, or admit them.

(Appellee's Resp. Br. at 12.)  U.S. Truck moved for a protective order, arguing that

Central States was not entitled to propound any discovery until it completed a survey of

the employer industries or otherwise took discovery from the non-party employers.

The bankruptcy court held a hearing on the motion, and, on March 21, 2003,

found that Central States's tactics were contrary to the court's September 27, 2002

order.  (App. at 65.)  The court therefore granted U.S. Truck's motion for a protective

order, assessed discovery sanctions against Central States, and ordered Central States

to use its statutory authority under 29 U.S.C. § 1399(a) to poll its contributing

employers.  (*Id.* at 65-66.)

The case was subsequently reassigned to Chief Bankruptcy Judge Steven W.

Rhodes.  (Appellant's Br. at 2.)  Consistent with the bankruptcy court's March 23, 2003

order, Central States prepared surveys to send to its contributing employers on April 18,

2003.  After receiving responses to the surveys (some of which were compelled by

lawsuits), Central States amended its interrogatory responses again on August 4, 2003

to indicate that 55.35% of its contributions in December 1999 came from employers not

6

engaged in the trucking industries.  (App. at 121.)  The responses were based both on the survey results and from information obtained from filings of the Securities Exchange Commission ("SEC") available for employers whose stock is publicly traded. (Appellant's Br. at 10.)  The parties dispute the relevance and admissibility of the survey responses and the SEC filings.

In May 2004, U.S. Truck moved for partial summary judgment as to the characterization of United Parcel Service ("UPS"), one of the contributing employers to the fund.  The parties do not dispute that during the year that U.S. Truck ceased operations, UPS's contributions constituted a large majority of the total contributions received by Central States.  Thus, a determination of UPS's primary industry is of great import to the application of the trucking industry exception.  U.S. Truck also asked for summary judgment on the basis that Central States had not met its court-imposed burden of proof.

Central States responded and filed its own motion for summary judgment. Central States argued both that the burden of proof should be on U.S. Truck to prove the applicability of the trucking industry exception and also that, even if it was Central States's burden, Central States had met that burden.

On January 27, 2005, Judge Rhodes found that Central States had not presented admissible evidence sufficient to meet its purported burden of establishing that the trucking industry exception did not apply.  (App. at 18-23.)

Central States timely filed its appeal.

7

### III.  DISCUSSION

### A.  The MPPAA

The MPPAA provides that when employers, such as U.S. Truck, withdraw from multiemployer pension plans they must pay withdrawal liability, the unfunded vested benefits attributable to that employer's participation.  *See* 29 U.S.C. § 1381(a). Specifically, "Congress determined that unregulated withdrawals from multiemployer plans could endanger their financial vitality and deprive workers of the vested rights they were entitled to anticipate would be theirs upon retirement."  *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 227-28 (1986).[2]  In order to alleviate the problem of employer withdrawals, Congress adopted the proposed "new rules under which a withdrawing employer would be required to pay whatever share of the plan's unfunded liabilities was attributable to that employer's participation." *Id.* (citing *Pension Ben. Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 723 (1984)).  To that end, "Congress imposed

_____

[2]Congress relied on reports which indicated that

A key problem of ongoing multiemployer plans, especially in declining industries, is the problem of employer withdrawal.  Employer withdrawals reduce a plan's contribution base.  This pushes the contribution rate for remaining employers to higher and higher levels in order to fund past service liabilities, including liabilities generated by employers no longer participating in the plan, so-called inherited liabilities.  The rising costs may encourage-or force-further withdrawals, thereby increasing the inherited liabilities to be funded by an ever decreasing contribution base.  This vicious downward spiral may continue until it is no longer reasonable or possible for the pension plan to continue.

*Connolly*, 475 U.S. at 216 (citing Pension Plan Termination Insurance Issues: Hearings before the Subcommittee on Oversight of the House Committee on Ways and Means, 95th Cong., 2nd Sess., 22 (1978) (statement of Matthew M. Lind)).

8

withdrawal liability as one part of an overall statutory scheme to safeguard the solvency of private pension plans. *Id.* at 227-28.

Thus, under the MPPAA, "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." 29 U.S.C. § 1381(a). Under the MPPAA, a complete withdrawal from a multiemployer plan occurs when an employer either "(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a).

In this case, the parties dispute whether U.S. Truck effected a complete withdrawal from the pension fund. (*See* Appellant's Br. at 5; Appellee's Br. at 6-7.) Assuming that U.S. Truck did effect a withdrawal, however, U.S. Truck argued that it is not required to pay the withdrawal liability, because the "trucking industry" exception applied. The trucking industry exception applies when "substantially all of the contributions required under the plan are made by employers primarily engaged in the long and short haul trucking industry, the household goods moving industry, or the public warehousing industry." 29 U.S.C. § 1383 (d)(2). According to Central States, "substantially all" means 85%. *See Continental Can Co. v. Chicago Truck Drivers Union Pension Fund*, 916 F.2d 1154 (7th Cir. 1990). In *Continental Can*, the Seventh Circuit performed an exhaustive review of legislative history of the MPPAA, the definition of "substantially all" in other statutes and the logical meaning of "substantially all" (*i.e.,* "'substantially all' sounds like 'less than all, but not much less'", *id.* at 1155) to arrive at the conclusion that "substantially all" under the MPPAA means 85% or more. *Id.* at

9

1155-59.  The court finds the reasoning of *Continental Can* persuasive and adopts it to conclude that in order for the trucking exception to be applicable, at least 85% of the contributions to the multiempployer pension plan must come from employers "primarily engaged" in the long and short haul trucking industry.

Plan sponsors have the authority under the MPPAA to require employers, upon thirty days notice, to provide "furnish such information as the plan sponsor reasonably determines to be necessary to enable the plan sponsor to comply with the requirements of this part." 29 U.S.C. § 1399(a).  One of the plan sponsor's obligations under the MPPAA is to determine withdrawal liability (or application of the trucking industry exception) after an employer's complete or partial withdrawal.  29 U.S.C. § 1399(b).

The MPPAA further provides that any determination made by a pension plan sponsor, such as Central States, regarding the applicability of the trucking industry exception "is presumed correct unless the party contesting the determination shows by a preponderance of the evidence that the determination was unreasonable or clearly erroneous." 29 U.S.C. § 1401 (a)(3)(A).  The MPPAA also provides that, until resolution of any disputes regarding withdrawal liability, employers are required to furnish a bond in an amount equal to 50 percent of the withdrawal liability of the employer.  29 U.S.C. § 1383 (d)(3)(B)(ii).

### B.  Burden of Proof/Trucking Industry Exception

Although Central States raises various allegations of error in its Appellant brief, its primary argument is that the Bankruptcy court erred in determining that Central States bore the burden of proof with respect to the trucking exception.  As stated above, the bankruptcy court found that, under the circumstances of this case, it was Central

10

States's burden to prove that the trucking exception did not apply to U.S. Truck's withdrawal liability.  (App. at 60.)  The bankruptcy court further found that Central States failed to meet that burden, exclusively because the bankruptcy court found that the employer surveys did not constitute reliable, admissible evidence.  The court will first address the issue of whether the bankruptcy court correctly allocated the burden of proof to Central States in the September 27, 2002 order.

The facts leading up to the September 27, 2002 order are, briefly, as follows.[3] U.S. Truck had sent to Central States a series of discovery requests, in the form of requests for admissions, interrogatories, and requests for production of documents. (App. at 3-4.)  These requests were predominately focused on whether more than 85% of the contributions to Central States's pension fund came from employers primarily engaged in the trucking industry.  Although Central States responded to these requests, its responses were cursory and did not provide the factual basis for its answers.  (App. at 32-33.)  U.S. Truck therefore filed a motion to compel, seeking full and complete answers to certain interrogatories and asking the court to award sanctions for the costs and attorney fees incurred in bringing the motion.  (*Id.* at 33-34).  U.S. Truck also sent a notice of deposition of Thomas M. Weithers, Central States's attorney, because he was identified as having knowledge of the underlying facts supporting Central States's responses.  (*Id.* at 32, 34.)

Central States filed a response and a motion for a protective to quash the deposition of Mr. Weithers.  (*Id.* at 34.)  Central States argued that because U.S. Truck

---

[3]The parties do not dispute the background facts forming the basis of Judge Shapero's order, only the conclusions of law which Judge Shapero drew from them.

11

bore the burden of proof on the trucking industry issue, U.S. Truck must conduct discovery directed at the third party contributing employers, rather than at Central States itself, in order to determine their primary business.  (*Id.* at 34-35.)  Central States also asserted that further discovery directed at Central States regarding the "trucking industry" exception was not appropriate, inasmuch as Central States expected to rely *only* on the staff report previously prepared for another case, *Central States, Southeast and Southwest Area Pension Fund v. Bellmont Trucking Co., Inc.*, 610 F. Supp. 1505 (N.D. Ind. 1985), aff'd 788 F.2d 428 (7th Cir. 1986), and Central States had already provided the underlying data to that report.  (App. at 35.)  Central States indicated that it would wait to see what evidence U.S. Truck obtained before it determined whether it would conduct any further discovery or revisit its prior calculations in the *Bellmont* case. (*Id.* at 36.)

Judge Shapero first found that the data and report presented in the *Bellmont* case was "entitled to minimal weight in determining the 'substantially all' issue in <u>this</u> case." (App. at 41 (emphasis in original).)  Judge Shapero stated this was "particularly so given the fact that 29 U.S.C. § 1399(a) gives Central States the statutory power to require employers to provide information on the industry in which it is primarily engaged . . . and thus provides Central States with a far superior means of proving its claim for withdrawal liability with a greater degree of certainty."  (*Id.*)  The bankruptcy court further held that the *Bellmont* data on the "substantially all" issue were essentially stale, given that so much time had passed since the *Bellmont* data were collected and also given that the make-up of the fund had changed to a great degree.  The court therefore held that Central States was required to decide immediately whether it will rely on the

12

*Bellmont* data, or whether it will conduct new calculations.  The court specifically warned

that Central States could not "sit idly by while [U.S. Truck . . .] shoulder[ed] the

enormous burden of discovering information on the Fund's contributing employers,

which information is within the control of Central States due to its statutory authority to

require employers to provide it."  (App. at 42.)  Central States was not permitted to wait

until U.S. Truck had made its determination regarding the "substantially all" issue, and

only then "decide that it will use its statutory authority to easily discover information that

was relevant to the controversy from the start so that it can recalculate percentages of

its contributing employers."  (*Id.* at 43.)  The court found that this approach would be

"strategic gamesmanship and contrary to the spirit of the federal discovery rules, which

seek to afford parties to litigation liberal pre-trial discovery with the purpose of

eliminating surprise at trial and giving each party a fair chance to present its position."

(*Id.*)  Judge Shapero therefore required Central States to determine what evidence it

would rely upon to establish the make-up of its contributing employers and disclose that

evidence to U.S. Truck.  (*Id.* at 43-44.)  Because Mr. Weithers had already been

disclosed as one source of this evidence, and because no attorney-client privilege had

been asserted (only a work product privilege, which was correctly found to not be

implicated), the court bankruptcy court ordered Mr. Weithers's deposition to occur.  (*Id.*

at 46-47, 54.)  The court also ordered full and complete responses to U.S. Truck's

interrogatories.  (*Id.* at 46, 54.)

     Although Central States does not directly attack the discovery rulings in the

September 27, 2002 order, these rulings provide the framework for both the allocation

of the burden of proof and the later order assessing discovery sanctions against Central

States.  The court finds that Judge Shapero's analysis with regard to the timing and

sequence of discovery was correct.  First, the court finds that the *Bellmont* data were

outdated and therefore entitled to "minimal weight," as the bankruptcy court held.

Indeed, the "substantially all" issue is the central issue of this $1.5 million case.

Allowing Central States to rely on twenty-year old evidence, where the fund composition

had undisputedly changed, would be unreasonable, especially when Central States

retains the statutory power to demand updated information from its contributors

pursuant to 29 U.S.C. § 1399(a) in order to respond accurately to the interrogatories.

Further, Judge Shapero correctly held that, in light of the outstanding discovery

requests, Central States was not entitled to "wait" to determine what evidence it would

present related to the "substantially all" issue and only disclose that evidence to U.S.

Truck after U.S. Truck had made its own discovery disclosures.  The court agrees that

this order is consistent with the spirit and mandates of the federal discovery rules.  (*See*

App. at 43 (citing *Brown Badgett, Inc. v. Jennings*, 842 F.2d 899, 902 (6th Cir. 1988);

*Crowe v. Chesapeake and Ohio Railway Co.*, 29 F.R.D. 148 (E.D. Mich. 1961); Fed. R.

Civ. P. 26(d).)

The court finds, however, that the bankruptcy court erred when it determined that

Central States bore the burden of proof to establish the trucking industry exception.

The provision of the MPPAA which governs resolution of disputes between employers

and funds concerning withdrawal liability provides that "any determination made by a

plan sponsor under sections 1381 through 1399 of this title and section 1405 of this title

is presumed correct unless the party contesting the determination shows by a

preponderance of the evidence that the determination was unreasonable or clearly

14

erroneous." 29 U.S.C. §1401 (a)(3)(A). The Supreme Court has held that in light of this language, "[i]t is clear that the presumption favoring determinations of the plan sponsor shifts a burden of proof or persuasion to the employer." *Concrete Pipe and Products of California, Inc. v. Constr. Laborers Pension Trust for S. California,* 508 U.S. 602, 621 (1993). The Supreme Court further construed "the presumption to place the burden on the employer to disprove a challenged factual determination by a preponderance" of the evidence standard. *Id.* at 629; *see also Sherwin-Williams Co. v. New York State Teamsters Conference Pension, Retirement Fund,* 158 F.3d 387, 392 (6th Cir. 1998) ("The Supreme Court has explained that the presumption established by § 1401(a)(3)(A) requires an employer challenging a factual determination made by the plan sponsor to disprove that factual determination by a preponderance of the evidence.").

Despite this statutory and Supreme Court case law, Judge Shapero found that in *this case*, the burden of proof regarding the trucking industry exception rested with Central States. (App. at 58.) Specifically, Judge Shapero held that the statutory burden of proof lay with the employer only if the plan sponsor had first made a factual determination regarding the applicability of the trucking industry exception based on "the most reliable available information under its control," and in this case Central States failed to do so. (*Id.* at 57-58.)

In so holding, Judge Shapero first noted that statutory presumptions and burdens of proof were based on considerations of fairness, and that the purpose behind the presumption in §1401 was to "'ensure the enforceability of employer liability' through granting presumptions and thereby preventing employers from nullifying their statutory

15

duty to pay withdrawal liability by requiring plan sponsors to prove the validity of their determinations before making payments."  (App. at 58 (citing *Concrete Pipe,* 508 U.S. at 628).)  This initial reasoning is supported by existing law,[4] and had Judge Shapero concluded at this point, he would have necessarily imposed the burden of proof, as statutorily provided, on U.S. Truck.

Judge Shapero, however, continued and found that in order for the presumption of correctness to arise under § 1401, the plan sponsor must make the determination with "a certain degree of reliability," because otherwise "granting the presumption would be unfair and contrary to established principles generally governing presumptions." (App. at 57.)  Judge Shapero concluded that "where an employer shows by a preponderance of the evidence that a plan sponsor has not based its withdrawal liability determination on the most reliable available information under its control, either that employer has rebutted the statutory presumption under 29 U.S.C. § 1401(a)(3)(A) by showing that the determination is unreasonable, or that the presumption, which presupposes a good faith determination, never arises in the first instance."  (*Id.* at 57.) In so holding, Judge Shapero departed from the plan language of 29 U.S.C. § 1401(a)(3)(A), and instead relied upon his interpretation of the congressional intent and statutory framework of the MPPAA.  (*Id.* at 57.)

_____

[4] Indeed, the Sixth Circuit has held that "[t]he series of presumptions prescribed by the Multiemployer Act were intended by Congress to 'ensure the enforceability of employer liability. In the absence of these presumptions, employers could effectively nullify their obligation by refusing to pay and forcing the plan sponsor to prove every element involved in making an actuarial determination.'"  *Board of Trustees, Michigan United Food and Commercial Workers Union v. Eberhard Foods, Inc.,* 831 F.2d 1258, 1260 (6th Cir. 1987) (citing H.R. Rep. No. 869, pt. I, 96th Cong., 2d Sess. 1, 86, *reprinted in* 1980 U.S.Code Cong. & Admin. News 2918, 2954).

There is simply no language within the MPPAA which justifies Judge Shapero's heightened requirement that Central States must base its factual determination on the "most reliable available information under its control."   (App. at 57.)  Instead, the MPPAA states that  "*any* determination made by a plan sponsor . . . is presumed correct unless the party contesting the determination shows by a preponderance of the evidence that the determination was unreasonable or clearly erroneous."  29 U.S.C. §1401(a)(3)(A) (emphasis added).  U.S. Truck is free to argue, of course, that MPPAA's determination is stale or not based on the "most reliable available information under its control," but this argument would be advanced, not in order to justify shifting the burden of proof, but in order to satisfy its own burden to prove by a preponderance of the evidence that "the determination was unreasonable or clearly erroneous."  29 U.S.C. §1401(a)(3)(A); *see also Concrete Pipe,* 508 U.S. at 629; *Sherwin-Williams,* 158 F.3d at 392.  Moreover, this argument would normally be advanced at the conclusion of discovery, after both sides have had their opportunity to gather all the necessary information.

The court sympathizes with Judge Shapero's underlying concerns.  As Judge Shapero found, there is no material dispute that Central States initially based its determination that the trucking industry exception did not apply on the "outdated statistics" from the *Bellmont* case, which raises questions about the accuracy of the determination.  (App. at 57.)  The court notes, however, that it seems somewhat intuitive that Central States, as plan administrator of the fund, would have sufficient knowledge of its 3,000 contributing employers to make at least a preliminary determination as to whether "substantially all" of its contributions were from employers primarily engaged in

17

the long and short haul trucking industry.  Indeed, it is also worth noting that the parties do not dispute that this is the only case in which the trucking industry exception has ever been found to be applicable.  Indeed, Central States asserts that since the *Bellmont* case, no other employer has even raised a trucking industry challenge to Central States's withdrawal liability assessment.  (Appellant's Br. at 20-21.)  Central States further contends that the 2003 employer survey it undertook in this case was "a substantial burden on Central States and on its contributing employers," and it would be unduly burdensome to impose this obligation (and cost) on Central States when challenges to its trucking industry determination are so infrequent.  (*Id.* at 21.)

While the court finds Central States's arguments persuasive, all of these policy considerations, whether for or against the fairness of the statutory allocation of the burden of proof, are purely academic.  Presumably, Congress has already considered these concerns and others, and in more depth than this court or the bankruptcy court.  It is not for this court to determine whether the statutory burden of proof allocation was the wisest choice.  *See City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) ("[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.").  There is no constitutional challenge to the MPPAA, nor could there be in light of the Supreme Court's determination that the imposition of the burden of proof on the employer, under a preponderance of the evidence standard, did not implicate due process concerns.  *Concrete Pipe*, 508 U.S. at 625-630.

The bankruptcy court heavily relied on the fact that Central States had information relevant to a withdrawal liability determination "peculiarly available" to it, yet

18

did not exercise its statutory right to obtain that information.  The bankruptcy court held

that, in such circumstances, "an adverse inference can be drawn that those facts would

be damaging to the position espoused by [the] plan sponsor."  (App. at 57.)  The court

agrees that in some cases an adverse inference may be drawn when a party does not

produce evidence peculiarly within its control.   "The 'classic' formulation of the rule is

that 'if a party has it peculiarly within his power to produce witnesses whose testimony

would elucidate the transaction, the fact that he does not do it creates the presumption

that the testimony, if produced, would be unfavorable.'"  *Yuk Shau Mui v. Wing*, No. 86-

3673, 1987 WL 38041, *2 (6th Cir. July 10,1987) (citing *Graves v. United States*, 150

U.S. 118, 121 (1893)); *see also Kowalchuk v. United States*, 176 F.2d 873, 877 (6th Cir.

1949) ("The general rule is that failure to produce available evidence which would help

decide the issue raises the inference that such evidence would be unfavorable to that

party if produced.").  Nonetheless, the court also notes that while an adverse inference

*can* be drawn under these circumstances, it need not be.  Moreover, this rule is a rule of

evidence, which is normally invoked after full discovery.  It appears that in this case, the

bankruptcy court improperly imposed a mandatory adverse inference and did so

prematurely.

In fact, it seems to the court that the motivation behind Judge Shapero's burden

of proof conclusion relates more to discovery issues than to statutory interpretation.  For

example, Judge Shapero held that:

> Congress did not grant individual employers, such as [U.S. Truck] the
> authority to require other employers to provide them with information on
> the industries in which they are primarily engaged.  For this reason, if the
> Fund did not obtain this information from its contributing employers before
> making a factual determination that an employer was not exempt from

19

withdrawal liability because the "substantially all" element of the "trucking industry exemption" was not met, and then provide that information to the employer on which it assessed withdrawal liability, that employer would, in effect, be denied the opportunity to challenge the Fund's determination. Contrary to the express intent of Congress, the rebuttable presumption in effect would become irrebuttable.

(App. at 58.)  The bankruptcy court thus held that if a fund did not provide this information at the same time it made its withdrawal liability determination, then the employer would never have evidence in its possession to challenge the determination. This court disagrees.  Where, as here, an employer challenges a withdrawal determination the fundamental device through which it can obtain such information is Federal Rule of Civil Procedure 26.[5]  Under the federal rules, the trial judge has "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton,* 523 U.S. 574, 598 (1998) (citing Fed. R. Civ. P. 26).  Indeed, "the court may limit the time, place, and manner of discovery, or even bar discovery altogether on certain subjects, as required 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense' . . . and the court may also set the timing and sequence of discovery."  *Id.* at 599 (citing Fed. R. Civ. P. 26(c) & (d)).

In light of this authority, a trial court, in this case the bankruptcy court, need not shift the burden of proof in order to ensure fairness.  Judge Shapero's primary concern was Central States's failure to utilize all of the statutory powers at its disposal, instead attempting to force U.S. Truck to expend enormous energy and cost to subpoena each individual employer.  The trial court, however, need only to fashion an order under the

---

[5]Federal Rule of Civil Procedure 26 applies in adversary procedures.  *See* Fed. R. Bankr. P. 7026.

broad discretion vested in it under Rule 26 to circumvent such improper discovery maneuvers.  Contrary to Central States's view,[6]  Rule 26 allows the courts to control the timing and sequence of discovery.  Indeed, the bankruptcy court recognized this authority in its September 27, 2002 order when it required that Central States exercise its statutory power to obtain the information sought by Central States in its discovery requests.  (App. at 43.)

In short, upon a *de novo* review, the court finds that the bankruptcy court incorrectly allocated the burden of proof to Central States in its September 27, 2002 order.  The MPPAA unambiguously imposes the burden on U.S. Truck to rebut Central States's determination that the trucking industry exception did not apply.  "It is a well settled canon of statutory construction that when interpreting statutes, '[t]he language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear.'" *United States v. Boucha,* 236 F.3d 768, 774 (6th Cir. 2001) (quoting *United States v. Choice,* 201 F.3d 837, 840 (6th Cir 2000) and citing *United States v. Rob Pair Enters., Inc.,* 489 U.S. 235, 241 (1989)).  In this case, the plain language of the MPPAA reveals that Congress imposed the burden of proof on the employer to rebut, by a preponderance of the evidence, the plan's determination regarding the applicability of the trucking industry exception.  29 U.S.C. § 1401(a)(3)(A). Indeed, even if the language of the statute was not in itself clear, this court has the benefit of the Supreme Court's opinion in *Concrete Pipe*, which has

---

[6]Central States appears to imply that the trial court does not have authority to control the sequence of discovery.  (*See* Appellant's Br. at 38 ("Judge Shapero imposed discovery sanctions against Central States . . . for having propounded discovery to U.S. Truck not in accordance with a sequence that Judge Shapero thought proper.").)

already interpreted this provision. *Concrete Pipe,* 508 U.S. at 621. There is no language in the text of the MPPAA or in *Concrete Pipe*, which justifies the bankruptcy court's "most reliable available information" requirement in order to effectuate Congress's intent in enacting the MPPAA generally or in allocating the burden of proof specifically. *See In re Comshare Inc. Securities Litigation,* 183 F.3d 542, 549 (6th Cir. 1999) ("When interpreting a statute, we must begin with its plain language, and may resort to a review of congressional intent or legislative history only when the language of the statute is not clear.") (citing *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, (1980)). The court will therefore reverse that portion of the bankruptcy court's September 27, 2002 order which held that Central States bore the burden of proof on the applicability trucking industry exception.

### C. Discovery Sanctions

As discussed above, regardless of whether the bankruptcy court erred when it held that Central States bore the burden of proof on the trucking industry exception, the court also held in its September 27, 2002 order that Central States was required to decide immediately whether it will rely on the *Bellmont* data, or whether it will conduct new calculations. The court specifically held that Central States was not permitted to wait until U.S. Truck had made its determination regarding the "substantially all" issue, and only then "decide that it will use its statutory authority to easily discover information that was relevant to the controversy from the start so that it can recalculate percentages of its contributing employers." (*Id.* at 43.) The court found that this approach constituted "strategic gamesmanship and [was] contrary to the spirit of the federal discovery rules, which seek to afford parties to litigation liberal pre-trial discovery with

22

the purpose of eliminating surprise at trial and giving each party a fair chance to present

its position." (App. at 43.) This court has determined above that this holding was

correct under the authority of Federal Rule of Civil Procedure 26, which allows the court

to control the timing and sequence of discovery and fashion orders to protect party's

from undue burden and expense. *See In re Mann,* 220 B.R. 351, 355 (Bkrtcy. N.D.

Ohio 1998) (citing *Misco, Inc. v. United States Steel Corp.,* 784 F.2d 198, 206 (6th

Cir.1986)) ("In the face of discovery disputes, the decision as to the manner and timing

in which discovery should proceed is left to the sound discretion of the trial court."). The

bankruptcy court withheld ruling on a motion for sanctions until a later date, when it

would have a clearer picture of the parties' conduct during discovery.

After the September 27, 2002 order, Central States provided amended

responses to U.S. Truck's discovery requests, and propounded discovery requests to

U.S. Truck. U.S. Truck moved for a protective order, and on March 23, 2003, Judge

Shapero found that Central States was continuing in "essentially the same tactics" for

which it had been admonished in the court's September 27, 2002 order. (App. at 65.)

The court noted that during the hearing on U.S. Truck's motion for a protective order

Central States's counsel "indicated that it would wait for [U.S. Truck's] responses and

then possibly pursue using its statutory authority to obtain the needed information

directly from its contributing employers." (App. at 65.) This was, indeed, the exact

conduct which Central States had been warned against in the September 27, 2002

order when the bankruptcy court ordered Central States to determine the basis of its

proofs immediately. This court therefore finds that the bankruptcy court did not err in

imposing discovery sanctions against Central States. Trial courts have broad discretion

23

in fashioning remedies during discovery. "Discovery sanctions are appropriate 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *In re Equity Land Title Agency, Inc.,* 326 B.R. 427, 431 (Bkrtcy. S.D. Ohio 2005) (citing *Nat'l Hockey League v. Metro. Hockey Club,* 427 U.S. 639, 643, 96 (1976)).

The court is not persuaded by Central States's argument that the bankruptcy court's erroneous conclusion that Central States bore the burden of proof mandates a reversal of the sanctions award. Instead, the sanctions award was based on the court's authority to set and enforce discovery orders under Federal Rules of Civil Procedure 26 and 37. The fact of the matter is that Central States's statutory authority (and, indeed, responsibility) to obtain information from its employers put it in a unique position of being able to garner information from its 3,000 contributing employers in a substantially less burdensome manner than requiring U.S. Truck to seek discovery from each of the non-party employers. Stated otherwise, Central States's authority to seek certain information from its contributing employers under 29 U.S.C. § 1399(a), puts that information within Central States's possession or control sufficient to subject that information to discovery under Rule 26. Thus, in order to fully respond to U.S. Truck's interrogatory responses, it was not unreasonable that Central States be required to survey its employers, as it is statutorily allowed to do. The bankruptcy court did not err,

either in its September 27, 2002 order, or in its March 23, 2003 order regarding Central States's discovery obligations.[7]

### D.  Summary Judgment

On January 27, 2005, Judge Rhodes found that Central States had not presented admissible evidence sufficient to meet its burden of establishing that the trucking industry exception did not apply.  (App. at 18-23.)   Judge Rhodes therefore granted U.S. Truck's motion for summary judgment, and denied Central States's motion.  In the process, Judge Rhodes made certain evidentiary rulings which Central States argues were in error.  Further, Central States argues, and U.S. Truck does not substantively dispute, that U.S. Truck has failed to present evidence establishing that it is entitled to the trucking industry exception.

---

[7]  The court notes that it reviews both the initial September 27, 2002 discovery ruling and the subsequent sanctions award for an abuse of discretion.  As the Sixth Circuit has explained:

"The scope of discovery is, of course, within the broad discretion of the trial court. . . . An order denying further discovery will be grounds for reversal only if it was an abuse of discretion resulting in substantial prejudice." *Bush v. Dictaphone Corp.,* 161 F.3d 363, 367 (6th Cir. 1998) (citation omitted) (alteration in original). *See also Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.),* 163 F.3d 570, 584 (9th Cir. 1998) ("A lower court's decision not to permit further discovery is reviewed for an abuse of discretion."); *Good v. Ohio Edison Co.,* 149 F.3d 413, 422 (6th Cir. 1998) (trial court's order denying additional discovery is reviewed for abuse of discretion); *Mulvania v. United States (In re Mulvania),* 214 B.R. 1, 6 (9th Cir. BAP 1997) (" '[A bankruptcy court] has wide latitude in controlling discovery, and its ruling will not be overturned in the absence of a clear abuse of discretion.' " (citations omitted) (alteration in original)); *Keybank Nat'l Assoc. v. Mann (In re Mann),* 220 B.R. 351, 355 (Bankr. N.D. Ohio 1998) ("In the face of discovery disputes, the decision as to the manner and timing in which discovery should proceed is left to the sound discretion of the trial court.").

*In re Valley-Vulcan Mold Co.,* 237 B.R. 322, 336 (6th Cir. B.A.P. 1999).

Upon initial review of the underlying cross-motions for summary judgment and the evidence cited therein, the court finds it likely that U.S. Truck will not be able to sustain its burden of proving the applicability of the trucking industry exception. There does not appear to be any dispute that U.S. Truck has failed to present its own evidence establishing that at least 85% of Central States's contributions came from employers in the trucking industry. *See In re Wright Enterprises,* 77 Fed. Appx. 356, 364 (6th Cir. 2003) ("[T]he moving party does not necessarily have to produce evidence showing the absence of a genuine issue of material fact. Instead, 'the burden on the moving party may be discharged by 'showing'--that is, pointing out to the [ ] court--that there is an absence of evidence to support the nonmoving party's case.'") (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). Nonetheless, the court will not review the record to determine whether a genuine issue of material exists with respect to the trucking industry exception. The court's holding that U.S. Truck, not Central States, bears the burden of proof on this issue, changes the landscape of this litigation. First, the parties have not fully briefed the trucking industry exception as now framed as U.S. Truck's burden, nor has the bankruptcy court reviewed the trucking industry exception applying the correct standard. More fundamentally, the court recognizes that, had the parties (or more particularly, had U.S. Truck) known from the outset of this litigation that it would bear the burden of proof, it may have performed more substantial discovery on this issue. Indeed, it seems that U.S. Truck's strategy during this litigation has been to point out the flaws in Central States's evidence and argue that the lack of credible evidence mandates summary judgment. In light of the rulings of the bankruptcy court, which to some extent endorsed this tactic, this court cannot find U.S. Truck's

26

strategy unreasonable.  The court does not hold definitively that discovery must be reopened, only that it is possible that discovery may be reopened.  Having presided over the parties' discovery efforts, the bankruptcy court is in a better position to determine whether U.S. Truck or Central States is entitled to additional discovery in light of this court's reallocation of the burden of proof.[8]  The court will therefore remand this case to the bankruptcy court to determine whether discovery should be reopened and to allow the parties a chance to brief and argue any summary judgment motions under the correct alignment of the burden of proof.[9]

Before remanding, however, the court will address Central States's remaining evidentiary challenges inasmuch as they will become relevant in any summary judgment determination on remand.  The court applies an abuse of discretion standard of review the bankruptcy court's evidentiary rulings.  *White Family Companies, Inc. v. Dayton Title Agency, Inc.,* 284 B.R. 238, 248 (S.D. Ohio 2002) (citing *United States v. Haywood,* 280 F.3d 715, 720 (6th Cir. 2002)).

---

[8]The court notes, however, that if discovery is reopened it does not necessarily mean that Central States will be required to survey its employers again in response to another interrogatory posed by U.S. Truck.  While the court has held that it was not unreasonable to require Central States to do this once, it does not follow that U.S. Truck can simply propound interrogatory after interrogatory to require Central States to undertake this burden repeatedly.  If another survey is absolutely necessary, however, there may be ways to fashion a discovery order to balance the costs of this undertaking. These are all matters, of course, which will be left to the sound discretion of the bankruptcy court on remand.

[9]The court also declines to make any ruling on UPS's classification.  The court finds this matter should be left for the parties to argue to the bankruptcy court, either with or without additional discovery.

27

First, the parties dispute the bankruptcy court's conclusion regarding the inadmissibility of the surveys sent by Central States to its contributing employers. On April 18, 2003, Central States sent questionnaires to the 3,219 employers who constituted the contributing employers in December of 1999.  (App. at 104.)  The questionnaires consisted of three parts, totaling four pages.  (*See, e.g.,* App. at 172-176.)  The first part asked the employer to indicate the industry in which it was "primarily engaged" by selecting from 27 preselected categories or by indicating "other."  (*Id.* at 172-173.)  The second part asked the employer to list each separate business entity that is required to contribute to Central States, and to further indicate its primary industry if it differs from the selection marked in part one.   (*Id.* at 175.)  The third part asked the employer to identify the most recent tax year which the employer filed a United States tax return, and to also provide a copy of the portion of the tax return which indicates a "business activity," a "business activity code," or "principal business activity." (*Id.* at 175.)

The parties debate whether these surveys are admissible as evidence and, if so, whether they contain any relevant information.  The bankruptcy court found that they were of no probative value and granted summary judgment to U.S. Truck solely on this basis, concluding that Central States had failed to meet its burden of proof.  (*Id.* at 22.)

According to Central States, prior to mailing the surveys, it sent U.S. Truck a copy of the survey for its review on April 8, 2003, but that U.S. Truck did not respond. (App. at 104.)   U.S. Truck claims that "[a]s early as October 2002, U.S. Truck objected to Central States intention to omit necessary information from the survey questionnaire." (Appellee's Br. at 14.)  While U.S. Truck indeed sent Central States a letter prior to the

28

formation of the draft survey outlining its view on what the survey should contain (*See* Appellee's App. at 127-129), U.S. Truck has not cited any evidence indicating that it objected to the final form of the survey after Central States provided it with a copy. Moreover, U.S. Truck admits that it "withdrew objections to the employer survey after the Bankruptcy Court advised that Central States would be responsible for its questionnaire and that if the questionnaire was defective, U.S. Truck would win." (Appellee's Br. at 14.)  The court notes that the cited hearing testimony does not exactly conform to U.S. Truck's characterization of it.  (*See* Appellee's App. at 431-432.)  In any event, there is no material dispute that U.S. Truck either did not object to the survey which Central States provided to it or it withdrew those objections.  More fundamentally, however, Central States was not required to obtain U.S. Truck's approval of the survey forms.  It appears to the court that sometime during the progression of this lawsuit the genesis of the survey requirement has been forgotten.  The surveys were sent by Central States to collect information within its statutory control in order to respond to U.S. Truck's interrogatories.  For this reason, the admissibility of the surveys or the SEC filings should not have been the primary question.  Central States's calculations, and the support for these calculations, are admissible through testimony of the proper Central States representative.[10]

Additionally, even if the admissibility of the surveys was the salient question, the court finds that the surveys are admissible as business records under Fed. R. Evid.

---

[10] The court notes, for example, that Harry E. Keil signed an affidavit attesting to the steps that were undertaken to gather the information necessary to respond to the interrogatories.  (App. at 99-111.)

803(6),[11] and also because of the "circumstantial guarantees of trustworthiness" which exist given that they were provided in accordance with a statutory duty. *See* Fed. R. Evid. 807.[12]  The SEC filings were likewise admissible under Federal Rules of Evidence 807.

Moreover, all of U.S. Truck's criticisms of the surveys go the weight, not the admissibility, of the surveys.  The bankruptcy court found that the questionnaires were ambiguous, because they did contain definitions of essential terms.  U.S. Truck also claims, and Judge Rhodes agreed, that the surveys were entitled to no weight because they were sent in 2003, and did not focus the employer's attention to 1999.  While this is certainly a flaw in the surveys, it does not completely negate all evidentiary value.  U.S. Truck has offered no evidence to suggest that any of the employers were confused by the surveys, or that any of the employers had completely changed industries between 1999 and 2003.  The court rejects the bankruptcy court's conclusion that a business is "just as likely" to change primary industries during a four year period than to remain

_____

[11]A business record must satisfy four requirements in order to be admissible under Rule 803(6):

> (1) it must have been made in the course of a regularly conducted business activity; (2) it must have been kept in the regular course of that business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.

*United States v. Salgado,* 250 F.3d 438, 451 (6th Cir. 2001) (citing *United States v. Weinstock,* 153 F.3d 272, 276 (6th Cir.1998)).

[12]The court notes that the surveys, SEC filings, or even compilations of these records could also be used to refresh a witness's recollection under Fed. R. Evid. 612.

stable. Aside from the fact that it seems counter-intuitive to this court, this conclusion

was unsupported by any evidence. Moreover, these are all issues which U.S. Truck

could explore on cross-examination or through independent discovery.

The court thus finds that the bankruptcy court abused its discretion in ruling that

the surveys were entitled to no probative value. The "problems" with the surveys go to

their weight, and U.S. Truck did not have sufficient evidence (or, rather, *any* evidence)

sufficient to support the conclusion that the surveys were completely unreliable and

irrelevant. Additionally, the court finds that the bankruptcy court abused its discretion in

failing to consider the additional evidence offered by Central States (SEC filings,

collective bargaining agreements, deposition testimony, etc.). On remand, the

bankruptcy court should consider not only the employer surveys, but all other submitted

admissible evidence.

### E. Bonding Requirement

The MPPAA provides that, until resolution of any disputes regarding withdrawal

liability, employers are required to furnish a bond or place an amount in escrow in an

amount equal to 50 percent of the withdrawal liability of the employer. 29 U.S.C. § 1383

(d)(3)(B)(ii). The MPPAA provides that if it is determined that Central States has

incurred "substantial damage" from the cessation of U.S. Truck's obligation to

contribute, the bond or escrow "shall" be paid to the plan. 29 U.S.C. § 1383 (d)(4).

Central States argues this provision mandates automatic payment, and that "[u]nder the

'reserve' for Central States's claim established in the bankruptcy there is no provision

for automatic payment to Central States upon satisfaction of this condition."

(Appellant's Reply Br. at 10.) Central States assets that U.S. Truck has failed to post a

31

bond under the conditions required by the MPPAA, and U.S. Truck's failure makes it liable for withdrawal liability even if U.S. Truck prevails on all other elements of the exception.  (Appellant's Br. at 37.)

The court disagrees.  First, contrary to Central States argument, the MPPAA does not require automatic payment to Central States in the event "substantial damage" is found.  Central States seems to imply that "automatic" equates with "shall," but the court is not persuaded.  U.S. Truck has deposited the requisite amount in escrow, as provided under the MPPAA.  The fact that "U.S. Truck is free, for example, to ask the bankruptcy court to postpone payment while it pursues further appeals," (Appellant's Reply Br. at 10), is simply not remarkable and certainly not a violation of the MPPAA. Central States argument on this issue is therefore rejected.

## IV.  CONCLUSION

For the reasons discussed fully above, IT IS ORDERED that bankruptcy court's orders are AFFIRMED in part and REVERSED in part as detailed in the body of this opinion, and this case is REMANDED for further proceedings.

                                S/Robert H. Cleland
                                ROBERT H. CLELAND
                                UNITED STATES DISTRICT JUDGE

Dated:  March 31, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 31, 2006, by electronic and/or ordinary mail.

                                S/Lisa Wagner
                                Case Manager and Deputy Clerk
                                (313) 234-5522

S:\Cleland\JUDGE'S DESK\Even Orders\05-70510.USTRUCK.BankruptcyAppeal.wpd